**S.B., Plaintiff**

**v.**

**J.B., Defendant**

Fam. No. D57/1995

Territorial Court of the Virgin Islands

Div. of St. Croix

May 6, 1996

Douglas A. Brady, Esq., Christiansted, St. Croix, U.S.V.I., *for Plaintiff*

J.B., *Pro Se, Defendant*

STEELE, *Judge*

### MEMORANDUM OPINION AND ORDER

This matter came before the Court on plaintiff's Motion for Summary Judgment. Specifically, the plaintiff requests this Court to enter a decree in this matter adjudging as null and void the marriage between himself and defendant. For reasons stated below, plaintiff's motion is denied and the Court sua sponte grants summary judgment in defendant's favor.

### FACTS

On January 23, 1990, plaintiff and defendant were cruising on a ship operated by the Holland America cruise lines which ported, among other places, in St. Thomas. The plaintiff alleges that upon arriving in St. Thomas, the defendant asked him, "Is this where you now marry me?" Determining from custom officers that it was easy to get married in St. Thomas, the parties proceeded to the Territorial Court to obtain a marriage license. A clerk in the

Territorial Court indicated that the parties could not be married within the same day since the Virgin Islands statute requires an "eight day" posting period.

Having been told that it took at least eight days before they could get married, the parties departed. The parties then proceeded to Government House and spoke with an administrator. After explaining their situation to the administrator, of being in port for just one day, the administrator called a Territorial Court clerk. Once again, the parties were told that it required an eight day posting period to get married in the Virgin Islands. However, during their discussion with the administrator, an individual overheard the conversation and indicated that the statute could be waived for "special cases." Subsequently, the parties were asked to return to the clerk. Upon returning, the parties were given a marriage certificate even though the plaintiff alleges they did not explain their "special case" to the judge who signed the certificate.

Also, plaintiff asserts that their marriage was plagued with many serious problems from its commencement due to his medical condition. Specifically, plaintiff alleges that he was diagnosed as impotent in 1986 prior to the time of their marriage in 1990. However, plaintiff argues that when his marriage took place, he was confident that his medical problem would be corrected. But, according to plaintiff his condition did not cure with treatment. Therefore, plaintiff requests this Court to enter summary judgment adjudging his marriage null and void due to the fact that his impotency rendered him incapable of entering into the marriage. In the alternative, plaintiff requests his marriage be declared null and void since his application was not posted for the necessary eight day period.

## ARGUMENT

A court may grant summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over

a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S.Ct. 2505 (1986).

The moving party bears the initial burden of showing that no genuine issue of material fact exits. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038, 50 L. Ed. 2d 748, 97 S.Ct. 732 (1977). After the moving party has met its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S.Ct. 2548 (1986). Any doubts are resolved in favor of the nonmoving party whose allegations are taken to be true. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983), *cert. denied*, 465 U.S. 1092 (1984). Applying this standard to the matter under consideration, the Court concludes that plaintiff is not entitled to summary judgment.

■ Since plaintiff advances two arguments to support his Motion for Summary Judgment, the Court will address each separately. This opinion begins by exploring the issue of the eight day posting period. The Court is not persuaded that plaintiff should be granted an annulment since his marriage license was issued without the necessary eight day posting period. Indeed, Title 16 V.I.C. § 37(a) provides that "Before any marriage license is issued, the application for such license shall be *posted* for *public examination* in the office of the clerk of the court for 8 days." (emphasis added). Although there is no legislative history supporting the reason for the eight day posting period, the Court is not convinced that failure of the clerk to adhere to this requirement is grounds for an annulment.

The plaintiff has submitted no evidence which would require the Court to rule in the contrary. Plaintiff argues only that the purpose of the eight day waiting period flows from the English law whose purpose is, among other things, to prevent hasty and ill-advised marriages. *See* 52 *Am Jur 2d, Marriage* § 36 (1970 ed). However, that section also states that even where parties were married without the necessary waiting period, such marriages are still valid if there are no other impediments. The plaintiff has presented no

evidence which suggests other impediments exist besides his contention that he was impotent at the time of his marriage.[1]

On the contrary, plaintiff argues that since 16 V.I.C. § 37(a) provides that the application "shall" be posted, this suggests that the failure to observe the requirement renders the marriage invalid in the absence of any validation statute. Moreover, plaintiff argues that compliance with the statute would have permitted the parties to take the necessary time to ensure that their actions were not on account of the excitement and challenge of the moment, hasty and ill-advised, but rather that they both were entering into the process with adequate consideration of its consequences.

■■ At the outset, the Virgin Islands statute does not provide for an eight day *waiting* period, but an eight day *posting* period. Consequently, the plaintiff's argument that failure to adhere to the statute deprived the parties the opportunity of not committing a hasty and ill-advised decision is not supported by Virgin Islands law. Section 37 clearly states that the license shall be *posted* for *public examination*. This suggest, that the Legislature intended to notify third parties of the proposed marriage instead of preventing the marriage applicants from committing a hasty and ill-advised decision.

■■ Furthermore, although § 37(a) provides that the license *shall* be posted, § 37(b) clearly provides that in "special cases" the court may issue a license without the posting requirement. Although plaintiff argues that the judge who signed the marriage certificate never asked what was their "special case," the Court notes that the parties were not given a marriage certificate until it was learned that 37(b) allowed a posting waiver for special cases. Therefore, the fact that the parties did not communicate directly with the judge who signed the marriage certificate does not indicate that ample information was not communicated to enable the judge to determine whether a special case existed. Moreover, public policy does not favor voiding a marriage entered six years ago merely because the marriage certificate was not posted for eight days. This contradicts all sense of reasoning. Any public

---

[1] The issue of impotence is discussed below in this opinion.

policy which may have been fostered by posting for eight days has long past with time. Therefore, although there is no genuine issue of material fact as to whether posting occurred, the Court finds that plaintiff has not met the second prong for summary judgment; namely, that he is entitled to judgment as a matter of law.

■ Plaintiff further argues that his marriage is illegal and subject to a declaration of its nullity pursuant to 16 V.I.C. § 2(3) as he was incapable, due to physical causes, of entering into the marriage. Specifically, plaintiff contends that his impotency, which was diagnosed in 1986, prevented him from entering into the marriage. To support his argument, plaintiff refers this Court to a letter submitted by Dr. Richard L. Fein[2] (Plaintiff's Exhibit B). On the other hand, defendant asserts that although plaintiff has a problem with penile erection, the parties had a sexual relationship from the date of the marriage until January 1996. Moreover, defendant argues that the medical evidence cannot categorically establish that intercourse did not take place. Importantly, the letter submitted by Dr. Fein does not conclusively state that defendant has been completely impotent from 1986 to present. On the contrary, Dr. Fein stated that plaintiff was able to obtain a full erection in 1986 with a good dose of papaverine and phentolamine before quitting this method of obtaining an erection in 1987 when he developed a fibrotic mass in his penis. Dr. Fein also stated that plaintiff remained impotent until he restarted his treatment in 1991 at which time plaintiff did not get the full erection response that he did in 1986. Noteworthy, Dr. Fein did not state that plaintiff did not obtain *any* erection but only that he did not obtain a *full* erection in 1991. Consequently, the issue of whether plaintiff obtained any erection in 1991 is a genuine issue of material fact which precludes plaintiff from obtaining an annulment on the grounds that his impotency prevented him from entering into the marriage.

■ Moreover, the Court finds that even if plaintiff was impotent throughout his entire marriage, for reasons stated below he would not be entitled to an annulment under Virgin Islands law. Title 16

---

[2] The Court notes that the letter is not notarized. However, defendant does not question the validity of the letter.

V.I.C. § 2(3) provides that "A marriage is illegal and shall be void from the time its nullity is declared by decree if either party thereto is incapable, from physical causes, of entering into the marriage itself." However, § 3(b) provides "No proceeding to declare the nullity of a marriage may be instituted by a person who, being fully capable of contracting a marriage, has *knowingly* and *willfully* contracted any marriage declared illegal by sections 1 and 2."[3]

As an initial observation, the Virgin Islands Code does not enumerate what constitutes "physical cause" for the purpose of determining a marriage void. However, it is a long accepted notion that impotency, a physical condition, is inherently a ground for annulment. *See Shearer v. Shearer*, 5 V.I. 439 , 356 F.2d 391, fn 17 (3d Cir. 1965). Consequently, one may conclude that the legislature intended that "physical cause" would include impotence. Nevertheless, the fact that plaintiff may have been impotent at the time of his marriage does not qualify him for an annulment pursuant to Virgin Islands statute. Section 3(b) prevents a person from declaring a marriage null where that person *knowingly* and *willfully* contracted a marriage that is declared illegal. At the time that plaintiff entered into marriage, he had knowledge that he was impotent.[4]

In response, plaintiff argues that § 3(b) does not apply to him since that section requires not only that the plaintiff knowingly and willfully entered into the marriage but he is also "fully capable of contracting a marriage." Plaintiff further asserts that since he was impotent at the time of the marriage, he was not "fully capable of contracting a marriage" as required by § 3(b). A logical progression of plaintiff's argument will lead one to conclude that any person who is impotent is incapable of contracting a marriage regardless of that person's knowledge. This type of reasoning defies logic.

■■ Although § 3(b) has no legislative history, careful interpretation of the statute reaches a different conclusion. "Fully capable of contracting a marriage" goes toward one's mental state

---

[3] Sections 1 and 2 enumerate the reasons for void and voidable marriages, respectively.

[4] Plaintiff alleges that he has been impotent since 1986 prior to the time of his marriage in 1990.

as opposed to one's physical state. "Fully capable of contracting a marriage," as stated in § 3(b), is intended to protect those who may knowingly and willfully enter into marriage but was legally unable to do so.[5] However, § 3(b) is not intended to protect an individual who enters into a marriage with a physical limitation, such as impotency, when the individual is cognizant of that fact. The Court feels this interpretation is consistent with the legislative intent as well as supported by other jurisdictions. *See T. v. M.*, 242 A.2d 670 (N.J. Super. Ct. Ch. 1968) citing New Jersey Statute 2A:34-1(c)(allowing impotency as grounds for nullifying a marriage provided the party making the application shall have been *ignorant* of such impotency or incapable at the time of the marriage. . .)(emphasis added); *D. v. D.*, 20 A.2d 139 (Del. Cas. 1941) citing Delaware statute § 3497 of the Revised Code of 1935 (incurable physical impotency . . . would not be a ground for decree annulling a marriage contract, unless said impotency . . . existed at the time of marriage, and the party making the application was *ignorant* of such impotency. . .)(emphasis added).

 ██ Seemingly, other jurisdictions allow annulment, on grounds of impotency, so long as the person petitioning the court had no knowledge of the condition at the time of marriage. Likewise, the Virgin Islands statute should be interpreted accordingly. Moreover, the fact that plaintiff thought his condition would be cured after the date of marriage does not provide an exception to the statute. If the legislature intended such an exception, it would have drafted one.

The Court notes that defendant did not file a cross motion for summary judgment. However, the fact that defendant has been proceeding pro se in this action may explain her inattention to filing the appropriate motion. Nevertheless, although defendant has not filed a cross motion for summary judgment, she is entitled to one as a matter of law. "Where one party has invoked the power of the court to render a summary judgment against an adversary,

---

[5] Note for example, Title 16 V.I.C. § 2(1) which provides that "a marriage is illegal and shall be void from the time its nullity is declared by decree, if either party thereto is an *idiot* or a person adjudged *lunatic*." (emphasis added). *See also*, § 2(4) which nullifies a marriage where a party is under the age of consent. . . .

the court has the power to render a summary judgment for the adversary if it is clear that the case warrants that result, even though the adversary has not filed a cross-motion for summary judgment." *Suid v. Phoenix Fire & Marine Ins. Co.*, 26 V.I. 223, 226 (D.C.V.I. 1991) citing *Peiffer v. Lebanon School Dist.*, 673 F.Supp. 147 (M.D.Pa. 1987), aff'd, 848 F.2d 44 (3d Cir. 1988).

Plaintiff has requested this Court to determine his marriage null and void on the grounds that he was not provided the necessary eight day waiting period as well as the fact that he was impotent at the time of his marriage. As stated above, the Court will not determine a marriage void for failing to post for eight days since the statute provides for a special case exception as well as the fact that no public policy will be fostered by annulling the marriage. Likewise, the Court will not annul plaintiff's marriage on the grounds that he was impotent since he had knowledge of his condition at the time of marriage. Accordingly, since plaintiff is not entitled to an annulment as a matter of law based on his reasons for an annulment, summary judgment should be entered in defendant's favor.

## CONCLUSION

Marriage is one of the most sacred contracts into which two parties may enter. As such, the Court is reluctant to disturb this bonding unless the law so provides. This is particularly true where a party asks the Court to adjudge as null and void a marriage that was entered into six years ago on grounds which seem less than meritorious. On the facts as presented to the Court, there is no basis to annul the marriage between plaintiff and defendant.

DONE AND SO ORDERED this 6 day of May, 1996.